## PAYNE *v.* STATE.

Nov. 17, 1952

No. 38518          8 Adv. S. 8          61 So. 2d 146

*J. G. Colson,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

McGEHEE, C. J.

The errors assigned on this appeal are, (1) that the trial court erred in overruling defendant's demurrer to the indictment, under which he was convicted of the crime of robbery with firearms; (2) that the defendant's application for a continuance of the case was improperly overruled; (3) that he was entitled to a directed verdict in his favor for want of sufficient proof to establish his guilt, or that in any event he was entitled to a new trial on the ground that the verdict of the jury was contrary to the great weight of the evidence; and, (4) that the court erred in refusing to grant certain instructions in favor of the defendant on the presumption of innocence.

The defendant Rex Payne was indicted under Section 2367, Code of 1942, which provides that ''Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . .'' **(Hn 1)** The indictment was in the language of the statute except that part which charged the defendant with having taken from the person *and* (instead of or) from the presence of the owner Dewey Ellis the personal property obtained in the robbery. But we are of the opinion that it was permissible for the indictment to charge the defendant with taking two diamond rings and a sum of money from the person of the owner and to charge that the remaining portion of the $11,000 was taken from his presence, since a good por-

tion of the money had been taken in varying amounts from a desk, a safe, and a suitcase, in the presence of Ellis while he was compelled to lie on the floor in the wareroom of his liquor store. Nor do we think that the indictment charged two separate offenses, since the defendant would have been guilty of the one crime whether he took all the money from the person of his victim, or part of it from his person and the remainder merely from his presence.

On the second assignment of error, the only one presenting any real issue for consideration, and which related to a denial of the continuance of the case, it may be assumed that the application for a continuance was in substantial compliance with Section 1520, Code of 1942, and the record shows that the same was sworn to by the accused. The application for continuance was based upon the alleged fact that one Billy Joe Perkins, a prisoner in the Hinds County Jail, would testify, if present at the trial, that the prosecuting witnesses came to the jail at Jackson prior to the trial and first identified another person, namely one Clinton Lewis, as being the person who committed the robbery; and it was further stated in the application that the said prisoner "is at present seriously ill" and unable to attend court in Leflore County pursuant to personal service of process which had been had upon him. The application was filed on November 23, 1951, and the trial was concluded on the following day.

Thereafter, on December 1, 1951, a motion for a new trial was filed which assigned, among other grounds therefor, the alleged error of the trial court in overruling the application for continuance. It was stated in the motion that an affidavit of the absent witness, Billy Joe Perkins, was being attached to the motion for a new trial. There is contained in the record before us an affidavit of the said Perkins bearing date of December 4, 1951, and which we shall assume was before the trial

judge when he acted upon the motion for a new trial, and wherein the affiant stated that the prosecuting witnesses "first identified another person, namely, Clinton Lewis, as being the person who allegedly robbed Dewey Ellis, and did not identify Rex Payne on that occasion, but did identify him later."

It should be observed that there were three men who entered the place of business of Dewey Ellis, where he had $15,000 to $20,000 worth of whiskey in stock, and robbed him on the night in question, and that the witnesses Ellis and his employee, Floyd Garrett—from whom some of the money was taken—and three lady customers were present at the robbery, and that they and one Kirby Mitchell, who carried the robbers to the scene of the crime in his automobile, all testified positively at the trial as to the identity of the defendant Rex Payne as one of the robbers, aside from the fact that the absent witness, Perkins, conceded in his affidavit that the prosecuting witnesses later identified the said Payne in the jail at Jackson after having first identified another person there, according to his version of what occurred at the jail.

Moreover, there were seven persons named in the indictment as having had some part in the crime, including W. R. Scott and Earl Scott, who lived at Columbus, Miss., and Kirby Mitchell, who lived at West Point, Miss., and, according to the testimony of Kirby Mitchell, it was shown that the defendant Rex Payne, and two others from Oklahoma, arrived in the vicinity where the Scotts lived on the day before the robbery occurred on Sunday night; that W. R. Scott, who was likewise engaged in handling whiskey, arranged with Kirby Mitchell to carry him and these three men to the scene of the crime on Sunday night, and that after the robbery the money was equally divided between the defendant, Rex Payne, and his codefendants, Sam Humphrey, Bully Cox, and W. R. Scott, and that the witness Mitchell later carried Rex

Payne to Birmingham, Ala., in his car, where he caught a bus for Memphis, Tenn., evidently en route back to Oklahoma.

According to the testimony of two ladies, who were waitresses at the Southern Prarie Club, at Columbus, they danced with Rex Payne and his fellow gunman on Saturday night at the club, and waited on them at the table on Sunday morning, although he did not tell them his name. The witness, Kirby Mitchell, was an employee of W. R. Scott in transporting whiskey to the Southern Prarie Club, and in working there. Moreover, the defendant Payne was identified by a merchant and his son as having stopped by the merchant's place of business between Columbus and Greenwood to purchase some gloves on the evening of the robbery, and their testimony was corroborated by the witness Mitchell. Although Mitchell was jointly indicted with the others, it was shown without dispute that he received no part of the loot, but was paid $15 for transporting the men from Columbus to Greenwood and return on the occasion of the robbery, and as the price for his employment in that behalf. He testified for the State and admitted that he had been promised immunity from prosecution under the indictment.

Section 1520, Code of 1942, relating to continuances, provides, among other things, that **(Hn 2)** ''a denial of the continuance shall not be ground for reversal unless the Supreme Court shall be satisfied that an injustice resulted therefrom.'' The testimony of the Hinds County prisoner, if he had been present at the trial, to the effect that the prosecuting witnesses first identified another person and later identified the defendant Payne, would have been overwhelmed by the testimony of all of the said witnesses to the contrary, and could not reasonably have affected the result. Moreover, it was not shown at the time of the hearing of the motion for a new trial that the absent witness was still ill, and the failure of

the defendant to produce him as a witness to testify, subject to cross-examination, at the hearing of the motion for a new trial was unaccounted for. We are, therefore, of the opinion that the action of the trial court in over-ruling the application for a continuance and later the motion for a new trial does not constitute reversible error.

The crime of robbery with firearms and Rex Payne's participation therein was fully established by the evidence, and beyond any reasonable doubt. According to the proof on behalf of the State, as given by five eye-witnesses, he entered the place of business of Dewey Ellis, three miles east of Greenwood, on Sunday night at about 10 o'clock, inquired as to the price of a case of good whiskey, and while Ellis was looking at the price list Payne drew a gun on him; that a fellow gunman then entered the place of business from the front and likewise exhibited a pistol; that thereupon a third gunman entered the building from the rear, and the three of them then forced Dewey Ellis, Floyd Garrett, three women customers, and two negro employees to lie down on the floor in the whiskey wareroom while the defendant Payne took $950 from the pocket of Dewey Ellis and two diamond rings from his hand, and approximately $750 out of the desk in the office, about $1,500 out of a safe, and then $7,300 out of a suitcase, after having struck Ellis and threatened his life with the pistol as he lay on the floor, stating to him that "I have been offered $5,000 for your head." In other words, both Ellis and Garrett were put in great fear by the exhibition of the firearms by Rex Payne and his companions during the robbery, while their hands and feet and those of the three ladies and of the two negroes were being tied, and the two white men and the two negroes were left on the floor of the ware-room, and then the three ladies were left tied and on the bed in a back room while the gunmen returned to the car

where Kirby Mitchell and W. R. Scott had been waiting during the robbery.

After the commission of the crime the appellant, Rex Payne, returned to Muskogee, Oklahoma, where the local sheriff recovered from him one of the diamond rings taken from Ellis during the robbery. The witness, Kirby Mitchell, who was jointly indicted was arrested in California and later returned to Mississippi, and was thereafter promised immunity from prosecution if he would tell what he knew about the commission of the crime.

The defense of the defendant Payne was an alibi. He introduced his sister and her husband from Muskogee, Oklahoma, who testified that his sister gave birth to a baby on the night of the robbery and that the appellant was then present at the hospital. He introduced another man and his wife who testified that at some time during that evening they attended a dance at Muskogee, Oklahoma, where they saw the appellant; that they were able to fix the date from the fact that they became engaged that evening to be married. Other witnesses were introduced to establish the alibi. The jury rejected the defense of an alibi and adopted the testimony which identified Payne as having been at the scene of the crime as a participant therein.

One of these defense witnesses admitted that the defendant had never worn glasses nor a mustache but he was shown by the witnesses for the prosecution to have been wearing glasses and growing a mustache when they saw him in the Hinds County jail five or six weeks after the robbery. He was wearing glasses and a mustache at the trial but not on the occasion of the robbery. The gunman who entered the place of business of Mr. Ellis from the rear door was wearing a mask. But the appellant and the other men did not have on any mask. We are of the opinion that from all of the testimony the defendant was neither entitled to a directed verdict in his

favor nor to a new trial on the alleged ground that the verdict was contrary to the great weight of the evidence.

**(Hn 3)** Finally, the appellant contends that the trial court was in error in refusing three instructions requested by him on the presumption of innocence. However, the court did not rule that he was not entitled to an instruction on the presumption of innocence, but merely refused the instructions presented by him for the reason that they did not contain correct announcements of the law in that regard. In this action we are of the opinion that, under the case of Carr v. State, 192 Miss. 152, 4 So. 2d 887, these three instructions were correctly refused.

From the foregoing views it follows that the judgment and sentence of the court must be affirmed.

Affirmed.

*Alexander, Lee, Kyle* and *Ethridge, JJ.,* concur.