320 So.2d 773 (1975)
Jessie James DUBOSE
v.
STATE of Mississippi.
No. 48704.
Supreme Court of Mississippi.
October 13, 1975.
A.H. McRae, Jr., Laurel, for appellant.
A.F. Summer, Atty. Gen., by John C. Underwood, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before RODGERS, SUGG and BROOM, JJ.
BROOM, Justice:
This rape case was tried in the Circuit Court of the First Judicial District of Jones County and resulted in a jury verdict of guilty as charged. Dubose, the defendant, appeals from the judgment which ordered that he serve a life term in the penitentiary. We affirm.
Issues raised relate to sufficiency of the evidence and the refusal of the trial court to grant two jury instructions requested by appellant.
Prosecutrix, twenty-nine years old, was returning to work following a visit to her parents. Dubose blocked the main traveled portion of the road with his car, forcing *774 her to stop. He then forced her, at gun point, into the woods where he choked and raped her. After he released her, she went to her residence and called a neighbor who alerted her husband. The following day the father of the prosecutrix noticed a car resembling the one described by his daughter as her assailant's vehicle. It was parked in a store lot. He took note of the tag number and went into the store to do some shopping. While in the store, he spotted a man fitting the assailant's description. He went and got his daughter who, upon arriving, identified the man as her assailant. The tag number from the car in the parking lot was then given to law enforcement officers who arrested the appellant.

I.
The appellant contends that the evidence was insufficient for the issues of fact to be presented to the jury, and that the evidence failed to sustain the verdict of guilty.
Minute details of the entire episode were testified to by the prosecutrix during the presentation of the state's case. She vividly described how she was thrown to the ground after Dubose drove her, in her car, into the woods. She said that she escaped once but that he grabbed her and threw her on the ground in front of her car where he pulled off her clothing and raped her. Her testimony reveals that there was no question in her mind but that Dubose was the one who raped her. When asked during the trial how she recognized him, she stated "by his physical appearances. I laid under him for fifteen or twenty minutes and I just know it is him."
Argument is made that the prosecutrix mistakenly identified Dubose. It is pointed out that she did not notice a missing finger and a tattoo on Dubose's hands. The mere fact that she did not note these physical characteristics was something for the jury to pass on in considering the weight and worth of her testimony. It is likewise true that the arresting officer, Nelson, also failed to note these physical characteristics of Dubose and was not aware of them until they were called to his attention by defense counsel during the trial.
We find no merit in the contention that the father of the prosecutrix influenced her to identify Dubose as her attacker. Careful study of the record does not reveal that her identification was tainted by coaxing or improper influence on the part of her father, who summoned her to the grocery store where he had seen a man (Dubose) whose description was similar to that furnished by the prosecutrix.
It is true that identification of Dubose was not corroborated by direct evidence from any other witness. Indeed, no such testimony was available since, as is usually the case, the rapist chose to perpetrate his criminal act in seclusion. This Court has held that the testimony of the victim of a rape may be sufficient to support a guilty verdict where the victim's testimony is neither contradicted nor discredited by other evidence or by surrounding circumstances. Lee v. State, 242 Miss. 97, 134 So.2d 145 (1961).
Several hours after the rape occurred, the prosecutrix was examined by a medical doctor who found contusions and abrasions on various parts of her body. Pelvic examination conducted by the doctor revealed a bruised and bleeding cervix and a tender pelvis. Vaginal bleeding was also noted by him.
It was testified by the husband of the prosecutrix that on the day of the crime he went to the scene where he located a pair of house slippers belonging to his wife.
Without taking the witness stand (as was his right), Dubose sought to establish an alibi by other witnesses who testified in his behalf. The state's proof showed that *775 the rape occurred shortly after 2:30 p.m., but a defense witness (Mrs. Taylor) testified that Dubose was at her house most of the time on the day of the offense until about 3:00 o'clock in the afternoon, at which time she said he went to his aunt's house next door. It was further testified by Dubose's aunt that he was at her house asleep from about 2:00 p.m. until 4:00 p.m. on the day of the offense. In rebuttal, Officer Nelson testified that he questioned Mrs. Taylor during his investigation. Nelson stated that before the trial Mrs. Taylor told him that Dubose was in and out of her house on the day of the crime but that there were certain periods of time when she couldn't say where he was. Another aspect of Officer Nelson's testimony was that when he arrested Dubose, Dubose (prior to being advised of the accusation against him) said, "I ain't bothered no woman."
Our analysis of the state's evidence shows that it was sufficient to withstand Dubose's motion for a directed verdict. It was the jury's duty to decide upon conflicting testimony whether or not Dubose was guilty. The jury chose to accept the state's evidence, which was sufficient to support the verdict. Cochran v. State, 278 So.2d 451 (Miss. 1973); Chinn v. State, 276 So.2d 456 (Miss. 1973).

II.
Refusal of the trial court to grant Dubose his requested instruction No. 8 is assigned as error. The requested instruction on the law of alibi as a defense might have been proper except that it stated: "The state must prove the alibi untrue... ." The instruction with the quoted language is a distortion of the law and incorrect because the state, after presenting its case in chief, does not have the burden to prove that the alibi was untrue by rebuttal testimony after the accused rests. The state's burden is to prove from the evidence, beyond a reasonable doubt, that the accused was at the scene of the alleged crime and committed the rape. Here the state's testimony (its case in chief), which the jury could accept or reject, was in contradiction to Dubose's alibi as testified to by his witnesses. Since the state's proof in chief was contradictory of the defense of an alibi, the state was not required to rebut (by other evidence) the asserted alibi. Newton v. State, 229 Miss. 267, 90 So.2d 375 (1956).
Here, as was the case in Newton, the state's proof in chief, if accepted as true, not only established Dubose's guilt but conclusively placed Dubose at the scene of the crime and not at his aunt's house. It was not necessary for the state to otherwise show that the alibi was untrue, and, thus, instruction No. 8 was properly refused.
Dubose contends that under this Court's decision in Newell v. State, 308 So.2d 71 (Miss. 1975), the trial court was obliged to give an instruction on its own as to the weight to be given his alibi. We held in Newell that:
... [T]he trial judge shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so. (308 So.2d at 78).
Since the accused failed to request a proper instruction on the subject of his alibi, he cannot complain that the lower court declined to supply one to the jury on its own initiative.

III.
Refusal of the trial court to grant Dubose his requested jury instruction No. 1 is also assigned as error. The instruction was on the presumption of innocence and contained the following language:
[T]his presumption of innocence goes all the way through the trial with the defendant, *776 and is sufficient to warrant an acquittal until the State has proven him guilty beyond a reasonable doubt.
A similar instruction was considered in Carr v. State, 192 Miss. 152, 4 So.2d 887 (1942), wherein it was pointed out that "no conviction could ever be had" if such an instruction is given with the "through the trial" language. Our decision there points out that the so-called presumption of innocence is not literally a presumption  an inference deduced from a premise  but more accurately an assumption which operates to place the burden of proof on the state. There, after stating that the burden of proof to establish guilt was on the state, the court said:
This burden never shifts to the defendant, yet there is no such sanctity in this assumption of innocence which renders it immune to actual proof of guilt, or prolongs its life beyond that moment when the reason and judgment of the jury accept the guilt of the defendant as proven. Redmond v. Marshall, 162 Miss. 359, 137 So. 733. Indeed, it should yield as to each respective juror as soon as and as long as such juror is by the evidence convinced beyond reasonable doubt of defendant's guilt.
There seems to be no reason why this assumption, although it may be conceded that it "enters the trial with the defendant," should "go throughout" the trial despite its early or complete liquidation by overwhelming proof. (192 Miss. at 156, 4 So.2d at 888).
A similar instruction was also condemned by this Court in Wells v. State, 288 So.2d 860 (Miss. 1974).
Affirmed.
GILLESPIE, C.J., and PATTERSON, INZER, SMITH, ROBERTSON and WALKER, JJ., concur.